EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| R & J Motors, Inc., H/N/C Autos del Caribe<br><br>Recurrido<br><br>v.<br><br>Departamento de Asuntos del Consumidor<br><br>Peticionario | Certiorari<br><br>2005 TSPR 48<br><br>163 DPR ____ |

Número del Caso: CC-2003-573

Fecha: 19 de abril de 2005

Tribunal de Apelaciones:

Circuito Regional de San Juan, Panel Especial CR I

Juez Ponente:

Hon. Pierre E. Vivoni del Valle

Abogado de la Parte Peticionaria:

Lcdo. José A. Maisonet Trinidad

Abogado de la Parte Recurrida:

Lcdo. Roberto Abesada-Agüet

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

R & J Motors, Inc.,H/N/C Autos
      del Caribe

      Recurrido

       v.                      CC-2003-573

Departamento de Asuntos del
      Consumidor

      Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 19 de abril de 2005.

Mediante el recurso presentado ante nos, el peticionario solicita de este Tribunal la revisión y revocación de la Sentencia emitida por el entonces Tribunal de Circuito de Apelaciones el 26 de marzo de 2003, mediante la cual se revocó una decisión del Departamento de Asuntos del Consumidor que impuso una multa al recurrido por no haber entregado al Departamento de Transportación y Obras Públicas, dentro del plazo correspondiente, los documentos necesarios para la inscripción de un vehículo de motor usado, a favor del nuevo dueño

I

El 10 de febrero de 2000, la señora Irma L. Batista Alvarado adquirió, mediante contrato de compraventa, de R & J Motors, Inc., haciendo negocios como Autos del Caribe, en adelante Autos del Caribe o "dealer", un vehículo de motor usado, marca Mitsubishi, modelo Mirage, del año 1998. El financiamiento de dicha compra estuvo a cargo de la entidad bancaria Citibank. Una vez perfeccionado el contrato de venta al por menor a plazos o contrato de venta condicional, Autos del Caribe, por motivo del financiamiento del vehículo, le cedió sus derechos como vendedor en el contrato a Citibank.

El 16 de febrero de 2000, Autos del Caribe pagó al Departamento de Transportación y Obras Públicas, en adelante D.T.O.P., las multas de tránsito que tenía el vehículo al momento de la transacción.[1] Posteriormente, el 8 de marzo de 2000, Autos del Caribe envió al Citybank toda la documentación de la compraventa condicional[2] para que éste realizara las gestiones correspondientes a la inscripción del vehículo en el D.T.O.P.[3] El 25 de octubre de 2000, Citibank le devolvió al "dealer" los documentos del automóvil alegando que había unas multas que no habían sido pagadas al D.T.O.P.

Dos (2) meses después, debido a una investigación realizada el 21 de diciembre de 2000, el Departamento de

---

[1] Apéndice del recurso de <u>Certiorari</u>, pág. 60.

[2] Íd., págs. 90-91; transcripción de la vista en su fondo, págs. 6-7. Transcurrieron veintiséis (26) días desde la compraventa hasta que le fueron entregados los documentos al Citybank.

[3] Apéndice del recurso de <u>Certiorari</u>. pág. 60.

Asuntos del Consumidor, en adelante D.A.C.O., emitió un aviso de infracción[4] contra Autos del Caribe por no haber sometido, en el término de treinta (30) días dispuesto en el Artículo 8 del Reglamento de Garantías de Vehículos de Motor [5], la correspondiente documentación al D.T.O.P., para la debida inscripción del vehículo.[6] Se le ordenó a Autos del Caribe pagar una multa de cuatrocientos dólares ($400).

Autos del Caribe le solicitó a D.A.C.O. que se celebrara una vista administrativa para discutir la procedencia de la multa impuesta. En la misma, el "dealer" querellado presentó los testimonios de la señora Olga Barreto, Gerente de Crédito de Autos del Caribe, y de la señora Carmen Díaz, encargada de procesar las licencias de vehículos de motor del "dealer".[7] La señora Barreto testificó sobre el procedimiento a seguir cuando una persona compra un vehículo de motor. Declaró que cuando se perfecciona la compraventa de un vehículo de motor usado, Autos del Caribe le provee una licencia provisional al comprador, se cerciora de que el automóvil no adeude nada en concepto de multas al D.T.O.P. y si debe alguna se encarga de pagarlas. [8] Añadió, que luego de entregar la licencia

---

[4] Este aviso fue notificado el 27 de diciembre de 2000., Apéndice del recurso de Certiorari, pág. 28.

[5] Artículo 8 del Reglamento de Garantías de Vehículos de Motor, Núm.4797, Departamento de asuntos del Consumidor, 30 de septiembre de 1992.

[6] Apéndice del recurso de Certiorari, págs. 27-29.

[7] Íd., pág. 61.

[8] Íd., pág. 61., Transcripción de la vista en su fondo, págs. 4-5.

provisional y de pagar las multas, le entrega al banco o entidad encargada del financiamiento todos los documentos relacionados al negocio, quien a su vez presenta al D.T.O.P. los documentos correspondientes para la inscripción del vehículo.[9] Expresó, que después de presentada a la entidad financiera, la documentación correspondiente al negocio de compraventa, el "dealer" pierde el control del caso.[10]

Por su parte, la señora Díaz declaró que Autos del Caribe pagó las multas que gravaban el automóvil vendido a la señora Batista Alvarado.[11] Indicó que suele darse la situación en que el D.T.O.P. se atrasa en la cancelación de las multas pagadas, por lo que el proceso de inscripción del vehículo se demora.[12] Además, añadió que el banco o la entidad financiera solamente le devuelve al "dealer" los documentos que éste le entregó, cuando aparece que no se ha pagado alguna multa pendiente ante el D.T.O.P.[13]

El 28 de agosto de 2001, D.A.C.O. emitió una resolución, resolviendo que Autos del Caribe, tal como se le imputaba en el aviso de infracción, había violado el Artículo 8 del Reglamento de Garantías de Vehículos de Motor, *supra*, por no haber sometido, en el término correspondiente, al D.T.O.P. toda la documentación necesaria para la inscripción del

---

[9] Íd.

[10] Íd., págs. 61-62.

[11] Íd., pág. 62.

[12] Íd.

[13] Íd.

vehículo en esa agencia y por lo tanto confirmaba la imposición del pago de una multa administrativa de cuatrocientos dólares ($400).[14]

Autos de Caribe, oportunamente, solicitó reconsideración. El 2 de octubre de 2001, el foro administrativo recurrido emitió una resolución, declarando sin lugar la moción de reconsideración y reiterando su dictamen. En dicha resolución señaló lo siguiente:

> No es al banco que provee el financiamiento sino al vendedor del vehículo de motor a quien claramente el Reglamento de Garantías de Vehículos de Motor, aprobado el 28 de septiembre de 1992, en su artículo 8, le impone la responsabilidad de someter ante el Departamento de Transportación y Obras Públicas los documentos requeridos por ley para la correspondiente inscripción dentro de los 30 días siguientes a la venta.
> El recurrente no demostró que dentro del mencionado término sometió los referidos documentos al Departamento de Transportación y Obras Públicas.
> Los trámites que se efectúen entre el banco y el vendedor no pueden en forma alguna tener el efecto de modificar lo dispuesto por el artículo 8 antes mencionado.[15]

Inconforme, el 1 de noviembre de 2001, Autos del Caribe presentó ante el entonces Tribunal de Circuito de Apelaciones recurso de revisión administrativa, solicitándole la revocación del dictamen de la agencia recurrida. El allí recurrente adujo que la determinación de la agencia

---

[14] Íd., 41.

[15] Íd., págs. 45-46

administrativa, por el alegado incumplimiento de Autos del Caribe al artículo 8 del Reglamento de Garantías de Vehículos de Motor, *supra*, y la imposición de la multa de cuatrocientos dólares ($400), no estuvo apoyada en evidencia sustancial. Arguyó que presentó prueba ante la referida agencia de que el Citibank es el responsable de presentar al D.T.O.P. la documentación pertinente, relacionada al contrato de venta al por menor a plazos.

El entonces Tribunal de Circuito de Apelaciones expidió el auto de revisión solicitado y emitió sentencia el 26 de marzo de 2003, en la cual revocó la determinación recurrida del caso de autos. Concluyó lo siguiente:

> ...D.A.C.O. erró al imponer a Autos del Caribe una multa por, alegadamente, no haber entregado al D.T.O.P. los documentos necesarios para la inscripción de un vehículo a nombre de la compradora. En primer lugar, la obligación de presentar tales documentos al D.T.O.P. recae sobre el acreedor financiero una vez éste asume control del caso, ya que, simultánea con el otorgamiento del contrato de compraventa a plazos, ocurre una subrogación mediante la cual el dealer cede sus derechos y obligaciones a la entidad financiera.[16]

La parte allí recurrida, D.A.C.O., le solicitó al foro intermedio apelativo la reconsideración de dicha Sentencia, la cual fue denegada el 3 de junio de 2003, archivada en autos copia de su notificación a las partes el 19 de junio de 2003.

Inconforme, D.A.C.O. acude ante nos mediante el presente recurso de *Certiorari*. Señaló como único error, cometido por el entonces Tribunal de Circuito de Apelaciones, el siguiente:

---

[16] Íd., pág. 73.

> **Erró el Tribunal de Circuito de Apelaciones al señalar que le corresponde a la entidad financiera cumplir con los deberes que la reglamentación vigente le impone al vendedor para beneficio del comprador, liberando al vendedor de sus responsabilidades ante el comprador, contradiciendo así la política pública del Estado Libre Asociado, de que el vendedor cedente no pueda liberarse de sus responsabilidades ante el comprador, según expuesta en la Ley de Ventas a Plazos y Compañías de Financiamiento[17], recogida en el Reglamento[18] y avalada por este Honorable Tribunal en el caso <u>Berrios v. Zambrana</u> [19] [sic]. (Citas suplidas)**

Contando con la comparecencia de ambas partes nos encontramos en posición de resolver.

II

Los contratos de ventas al por menor a plazos están regulados por la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*. Esta ley, en su sección 749, establece las disposiciones que estarán prohibidas en los contratos de venta a plazos e incluye los derechos y deberes del comprador y del vendedor. Específicamente, respecto al vendedor, establece que ningún contrato de esta índole podrá contener cláusula alguna en la cual "el comprador releve al vendedor de la responsabilidad que pudiera éste tener para con él bajo el

---

[17] Ley Número 68 de 19 de junio de 1964, 10 L.P.R.A. secs. 731 et seq.

[18] Se refiere al Reglamento de Garantías de Vehículos de Motor, citado anteriormente en la nota al calce número cinco (5).

[19] 123 D.P.R. 317 (1989).

contrato o cualquier otro documento otorgado en conexión con el mismo".[20]

Cuando ocurre una cesión de un contrato de compraventa a plazos, se crea una relación tripartita entre el comprador, el vendedor y la compañía financiera.[21] La finalidad propia de la cesión es la transmisión de la titularidad del contrato de venta condicional del cedente al cesionario.[22] Aunque se transmite la titularidad del crédito, el vendedor no queda desligado de su relación originalmente establecida con el comprador. En Berríos v. Zambrana, *supra*, nos expresamos sobre la aplicación, en casos como el presente, de las obligaciones del vendedor contenidas en el Código Civil. Allí se establece que las obligaciones principales del vendedor son la entrega y el saneamiento de la cosa vendida.[23] Establecimos que en la cesión de un contrato de venta al por menor a plazos, el vendedor cedente no queda liberado, porque en virtud de la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*, el legislador expresamente dispuso que el vendedor retiene su responsabilidad frente al comprador.[24] Aunque el cedente haya cedido el contrato de venta a plazos a la entidad financiera (cesionaria), no queda liberado de toda responsabilidad

---

[20] 10 L.P.R.A. sec. 749 (f).

[21] Berríos v. Zambrana, *supra*, pág. 328.

[22] Íd. pág. 329.

[23] Artículo 1350 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3801.

[24] Berríos v. Zambrana, *supra*, pág. 330.

surgida de su relación con el comprador como vendedor del vehículo de motor. Tal como mencionamos en Berríos v. Zambrana, *supra*, la figura o relación descrita, creada por el legislador, constituye una "cesión atípica o *sui géneris*".[25]

El Reglamento de Garantías de Vehículos de Motor, *supra*, adoptado y promulgado de acuerdo con los poderes conferidos al D.A.C.O. por la ley número 5 de 23 de abril de 1973,[26] según enmendada, la ley número 7 de 24 de septiembre de 1979[27] y la ley número 170 de 12 de agosto de 1988,[28] según enmendada, establece en su artículo 8 una obligación específica que todo vendedor debe cumplir tras la venta de un vehículo de motor. Dicho artículo dispone lo siguiente:

> Todo vendedor de un vehículo de motor someterá al Departamento de Transportación y Obras Públicas toda la documentación exigida por ley para su inscripción dentro de los treinta (30) días siguientes a la fecha de venta.[29]

En su artículo 5, define vendedor, para efectos del cuerpo reglamentario, como "toda entidad o persona que debidamente

---

[25] Íd.

[26] Departamento de Asuntos del Consumidor, 3 L.P.R.A. secs. 341 et seq.

[27] Garantías de Vehículos de Motor, 10 L.P.R.A. secs. 2051 et seq.

[28] Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. secs. 2101 et seq.

[29] Artículo 8 del Reglamento de Garantías de Vehículos de Motor, *supra.*

autorizada por ley se dedique a la venta o permuta de vehículos de motor en Puerto Rico".[30]

La parte peticionaria arguye que actuó incorrectamente el entonces Tribunal de Circuito de Apelaciones al ampliar la letra clara del artículo 8 del Reglamento de Garantías de Vehículos de Motor, *supra.* Sostiene que incurrió en error al determinar que cuando ocurre la subrogación en la cesión del contrato de venta a plazos, el vendedor (cedente) queda liberado de la responsabilidad impuesta en dicho artículo, ya que ésta se cede a la entidad que brindó el financiamiento (cesionaria). Añade, además, que tal decisión es contraria a derecho y a la política pública del Estado, expuesta en la legislación vigente.[31]

El foro intermedio apelativo determinó que debido a las prácticas vigentes en el negocio de compraventas condicionales de vehículos de motor, se le debía dar una interpretación más amplia al artículo 8 del Reglamento de Garantías de Vehículos de Motor, *supra*, por lo que le correspondía al Citibank la obligación de proveer al D.T.O.P. la información necesaria para inscribir el vehículo a nombre de la señora Batista Alvarado. Señaló que interpretar lo contrario, o sea que la responsabilidad que surge de tal artículo 8 no es del banco sino del "dealer", "impondría sobre los vendedores de autos una carga adicional, ajena a sus intereses en el ámbito de su

---

[30] Íd., artículo 5.

[31] Recurso de Certiorari, pág. 6.

actividad comercial, que es la venta de autos"[32]. Bajo esa conclusión, eximió a Autos del Caribe del pago de la multa de cuatrocientos dólares ($400), impuesta por D.A.C.O.

No compartimos la óptica del entonces Tribunal de Circuito de Apelaciones. Como vimos, en la Ley de Ventas a Plazos y Compañías de Financiamiento, *supra*, el legislador estableció que en las ventas a plazos el vendedor no queda liberado de sus obligaciones frente al comprador. En Berríos v. Zambrana, *supra*, resolvimos que el vendedor mantiene sus responsabilidades ante el comprador, aún cuando éste ceda a una entidad financiera los derechos adquiridos de un contrato de venta a plazos. Ante esta situación, el vendedor cedente retiene sus obligaciones principales de saneamiento y entrega de la cosa vendida, según establecido en nuestro Código Civil.[33] No obstante, la responsabilidad del vendedor cedente no se limita a las obligaciones principales establecidas en el Código Civil. La Asamblea Legislativa le confirió al D.A.C.O. el poder para regular de forma específica los asuntos relacionados a la venta y garantías de vehículos de motor.[34] Por lo tanto, la obligación impuesta al vendedor en el artículo 8 del Reglamento de Garantías de Vehículos de Motor, *supra*, que consiste en entregar al D.T.O.P. los documentos necesarios para la inscripción del vehículo, surge de ese

---

[32] Apéndice del recurso de Certiorari, pág. 72.

[33] 31 L.P.R.A. sec. 3801.

[34] Exposición de motivos de la Ley número 7 de 24 de septiembre de 1979; 10 L.P.R.A. secs. 2053 y 2063; Artículo 2 del Reglamento de Garantías de Vehículos de Motor,*supra.*

poder delegado. Bajo los principios de hermenéutica, si un estatuto es claro y susceptible de una interpretación inequívoca según el significado común de sus palabras, los tribunales deben aplicar esta voluntad legislativa y no darle o añadirle un significado que no está contenido en él.[35] De igual manera, si de un reglamento, aprobado y promulgado según el poder cuasilegislativo conferido por la Asamblea Legislativa a una agencia administrativa, surge un lenguaje claro y preciso, los tribunales no deben interferir con la voluntad de la agencia especializada para así añadir o alterar lo dispuesto por ésta dentro de sus facultades. El tribunal interpreta, pero no legisla.

El artículo 8 del Reglamento en controversia dispone específicamente que la responsabilidad de someter los documentos al D.T.O.P., para la inscripción del vehículo, es del vendedor, definido como entidad o persona, debidamente autorizada, dedicada a la venta de vehículos de motor. Por lo tanto, esta obligación es del vendedor (cedente) y no de la compañía que financió el vehículo. La compañía financiera no es considerada un vendedor a los efectos de la referida disposición reglamentaria, razón por la que no está llamada a cumplir con esa obligación impuesta por dicho cuerpo reglamentario al vendedor (cedente).

---

[35] Véase el Artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. "Cuando la ley es clara se observará su letra"; Meléndez v. Tribunal Superior, 90 D.P.R. 656(1964); R.E. Vernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da. Ed., San Juan, Publicaciones J.T.S., 1987, Vol. I, Cap. 43, pág. 311.

Autos del Caribe, vendedor cedente, tiene la responsabilidad de cumplir con las obligaciones principales de todo vendedor, establecidas en el Código Civil, y con la obligación impuesta por D.A.C.O. en virtud del Artículo 8 del Reglamento de Garantías de Vehículos de Motor, *supra*, de entregar al D.T.O.P. los documentos pertinentes para la inscripción del vehículo de motor a nombre de la señora Batista Alvarado.

Concluimos que el entonces Tribunal de Circuito de Apelaciones incidió en el error señalado. Por lo tanto, corresponde a Autos del Caribe y no al Citibank, el pago de la multa de $400 ordenada por D.A.C.O., por la violación al artículo 8 del Reglamento de Garantías de Vehículos de Motor, *supra.*

### III

Por los fundamentos antes expuestos, revocamos la sentencia recurrida, emitida por el entonces Tribunal de Circuito de Apelaciones, y reinstalamos la Resolución dictada por el Departamento de Asuntos del Consumidor, ordenando a Autos del Caribe a pagar una multa administrativa de cuatrocientos dólares ($400).

EFRAIN E. RIVERA PEREZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

R & J Motors, Inc. H/N/C Autos
del Caribe

      Recurrido

         v.              CC-2003-573

Departamento de Asuntos del
Consumidor

      Peticionario

SENTENCIA

San Juan, Puerto Rico, a 19 de abril de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia recurrida, emitida por el entonces Tribunal de Circuito de Apelaciones, y reinstalamos la Resolución dictada por el Departamento de Asuntos del Consumidor, ordenando a Autos del Caribe a pagar una multa administrativa de cuatrocientos dólares ($400).

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita.

                Aida Ileana Oquendo Graulau
            Secretaria del Tribunal Supremo